case. I believe our final case. Case number 23-3775 from the District of South Dakota, United States v. Anthony Red Elk. All right. Mr. Murphy. Thank you. Good morning, Your Honor. Good morning. And before you proceed, I note that you were appointed in this case under the Criminal Justice Act. I was. The court wishes to express its thanks to you for agreeing to render this service. Well, thank you for that, Your Honor. There are three issues in the case. I'd like to focus most of my time on the first two because those are the fact-intensive inquiries that was raised or were raised by Mr. Red Elk. The first issue is whether the district court abused its discretion in admitting KW's testimony under Rule 413. And the interesting part of this argument or this issue is that the government and the defense both agree on the case law at issue. We cite most of the same cases. There isn't really a substantial legal dispute, but it's how the court applied the facts to the case law. All of the case law cited, and there's a wealth of cases from the Eighth Circuit on this issue since the enactment of 413, stand for the same principle, which is that the movant, in this case the government, has to establish a substantial similarity between the 413 evidence and the charged evidence. Why? I mean, why does our case law say that, do you think? I mean, if you look at the plain language of 413, the words similar or substantial don't appear there. Similar does, Your Honor. Similar does. Okay. It's in the title. So, yeah. So, that gets back to sort of the similar bad acts. But I guess my point is, is it allows propensity evidence, right? 413 allows propensity evidence. 404B does not. 404B bans it. And a lot of courts have brought in under 404B a similarity requirement for some of the categories of evidence. But it just seems to me to bring that similarity, you know, the requirement of a substantial similarity. I don't know. It just, it seems like it's much, it should be much broader than 404B. I think the reason why, and the cases that we cited and we quoted from this court, which use terms like striking similarity, substantial similarity, why that is part of this statute is because it allows propensity evidence. If we go back to the 404B litigation that happened for decades prior to 413, the court repeatedly cautioned that when you introduce potential propensity evidence, it has the possibility of overwhelming the jury, that they will subrogate their independent judgment and allow propensity evidence to direct their decision-making regarding the charge defense. And so I think it's that risk, because we understand and we've understood for well over 100 years that propensity evidence has such a prejudicial or potentially prejudicial impact that we have to be careful. Even though 413 opens up a new category of evidence that's allowed in, propensity evidence being it, we still have to be careful. And that's what I think is reiterated in the court's prior decisions is, let's look at the facts. Let's see whether or not it rises to the level of similarity that allows this potentially inflammatory evidence to be admitted in these very serious cases. Should the rule be different, though? Most of our cases have involved adults. Never Misses a Shot, I think, was an adult case, although don't quote me on that. Should it be different when you're talking about minors? You know, we say substantial similarity, but I wonder if, for example, I'm just going to use the word pedophilia. If there is evidence of pedophilia, then maybe we should loosen that substantial similarity requirement. Or better yet, maybe that's a similarity between the two crimes, that somebody is targeting somebody who's young. I don't know, but it just seems to me that maybe it should be a little looser than with adults. I think I would argue the opposite. Because of the jury predisposition to believe children to have their passions inflamed when there is an accusation of a sex crime by an adult against a child, that we have to be extra cautious about propensity evidence overwhelming the jury. But also, in this case, as we know from Counts 2 and 3, this was — those were allegations of a crime by an adult against an adult. So — but the propensity evidence is admitted carte blanche, essentially. And there is really no meaningful limiting instruction. That's one thing that is a further prejudicial impact when we get to 413 evidence, is in 404B, the jury is typically instructed, this evidence was admitted for a limited purpose, motive, or modus operandi, or something like that, and it should only be considered for that purpose. Whereas the instruction given in 413 evidence says to the jury, you can consider this evidence for any purpose that you deem it to be relevant. So it's not a limiting instruction. It's actually an expanding instruction. Well, and that's — that's the interesting part about it, is the relevance part of it, which is, if you — you know, take a — take a situation in which there's multiple crimes against two different minors. I understand one of the — the testimony came from a minor who is no longer a minor, but it still happened while the person was a minor, the sexual assault. But it seems to me that if you — if you target a minor once, and then you target a minor a second time, that is relevant. I mean, maybe it's unfairly prejudicial, but I think it at least meets the bare minimum of relevance. You have now targeted minors more than one time. Well, I think we have to have the facts clear here. The allegation by KW, the 413 evidence, was when both KW and Mr. Red Elk were minors. That's fair. And so — and that's one of the big distinguishing factors here. We look at the facts and the theory of prosecution and everything that was presented to the jury. CTB, the charged victim, was a close family member. Mr. Red Elk is her uncle. There's extensive discussion about close family ties. You know, the — the opening statement of the government was that this was a crime, a secret crime, perpetrated by an older relative against his young niece. And they talk about it being in secret because it was in the privacy of their home. KW's allegation is that Mr. Red Elk, a person she barely knew — they were — both went to the same high school, they're the same age approximately — violently attacked her in a public place. Nothing factually similar to what CTB referenced. CTB talks about this as being crimes — the charged crimes involving her. When Mr. Red Elk was intoxicated, KW makes no mention of alcohol intoxication. The government's theory and the evidence regarding CTB was that Mr. Red Elk acted in an opportunistic manner. If he was home and CTB was home and nobody else was there and he was intoxicated, he would commit crimes against her. Whereas KW's allegation was of this premeditated plan by him to lure her away from the basketball courts when they're both teenagers and then violently attack her. And so the factual scenarios, whether this is a 404B or a 413 analysis, is that these are really distinctly different crimes. Well, and you've also got three very distinct crimes that are — well, I don't know if all three, but you've got three counts here, right? Maybe two and three are more similar. But count one is fairly distinct. I think the niece was 10? 10. And so how does the district — how would you propose that a district court assess sort of similarity in those situations? I mean, you know, I guess the simplistic answer would be, say, well, you've got some evidence that's similar to one of the counts, so it's relevant to that. But I don't — but I think then it runs into — I don't know if it's your 403 argument, but the idea that then it's being sort of rolled into these other ones that are very dissimilar — I don't know if I'm making sense, but I just feel like this is all kind of mixed up together, and it's particularly challenging here because of the distinct types of offenses that were charged in the same indictment. It could in some scenarios, but in this case, even though the charged conduct is different for all three counts — count one, CTV was 10 years old. Counts two and three, she was an adult, but count three, she was passed out from intoxication. There isn't a nexus that ties any of those counts to the kind of factual scenario that was attested to by KW, and so that's the 403. Okay, so your position is, yes, that may be the case, and that may be another case where there's a problem, but it doesn't raise itself here because however you look at it, KW's evidence is just not similar to any of them? Is that kind of your bottom line? That's a fair analysis, and you need only look at what the government proposed as their theory of prosecution. Everything they oriented the evidence to was Mr. Red Elk, in regard to CTV, preyed upon her as a family member, committed these crimes in his home when nobody else was around, and relied on that family dynamic to prevent it being reported, whereas KW is a complete outlier. None of the facts of KW's allegation fits anywhere in the government's theory of prosecution. Counsel, can I just — I hate to do this to you, but you mentioned that similar does appear in the title, and it does. It appears in the title in 413, but one thing I think that we're missing here is that it says, may admit evidence the defendant committed any other sexual assault. That language of similarity is not repeated in the actual language of the rule, and in fact, any is about as broad as you can come up with, and so I guess I'll go back to my original question. Boy, there seems to be some conflicting guidance in the rule itself as to how similar it must be, and I'm just not sure striking — I mean, maybe we're bound, but striking similarity seems to be a really atextual interpretation of the rule. You know, and thank goodness for vague and ambiguous statutes, otherwise we'd all be out of business, but the reality is all of the case law that this Court has issued since then, and I think because of the reflection or the consideration of the immense prejudice that can accrue when propensity evidence is admitted, has narrowed that down. I don't see any case this Court has issued, and there's some cases where the Court has said, this just is not similar enough to warrant admission under 413 because it isn't substantially similar. Do you think that — is that a nod to — on any matter to which it is relevant? I don't — those are two different words. It is, and I think you've hit it on the point. One of the cases I cited says similarity is the linchpin of relevancy, and so the similarity is what makes the evidence relevant, and that linchpin dynamic suggests we need to have striking similarity. And it sort of maybe narrows the propensity. In other words, propensity to do a particular type of act rather than bigger-picture propensity. You did sort of any kind of — not any kind, but a broader range of conduct that may or not be relevant to — Exactly. Yeah, and that's our point, and I think that's what the Court's previous cases have identified. I mean, consider if we took it strictly as any. If Mr. Reddock had a conviction for lewdness, for public urination, that would — if we strictly said any prior sex crime, that could conceivably be admitted in a trial like this, even though  But it does say any other sexual assault, to be fair. Okay. So public urination wouldn't get you there, but I get the point. There could be a very different sexual assault. And I think these are such — I've already run into my time for rebuttal, but I do want to touch base on the second issue, which is the use of force enhancement, because this one does have a clearly prejudicial impact, because if the Court agrees with us, it requires a recalculation of the guidelines because of the multiple-count adjustment. I would suggest to the Court that pages 21 to 23 of the sentencing transcript make our argument as to the confusing nature and the way in which both the government and the district court were confused as to what was going on. There's two layers of confusion. First, the district court confused physical restraint with use of force. And those are completely different things. And my client did get the adjustment for physical restraint. That's in paragraphs 30 and 36. The facts that the government alleges constitute use of force were identified by the probation office as justifying the physical restraint issue, that my client allegedly pushed CTB down onto a couch. I think you have a hard time with count two, where they found blood spots and there's some indicia of some force there. I think count three is a much stronger argument though. Well, Your Honor, I think the Bordeaux case says that the injury issue is relevant if the injuries were caused by the force used to create submission, as opposed to the sex act itself. There is nothing regarding count two that suggests that the soreness on her thighs, the stomach ache, and the spotting in her underwear was caused by Mr. Red Elk physically forcing her to submit to the sex act. In fact, her testimony was he pushed me onto the couch and then she said, quote, I just let it happen, unquote. There was no, no, the push under Bordeaux was not enough. And the push created the physical restraint adjustment, which is a two-point adjustment. Use of force is a four-point adjustment. Just by that, that's a substantial upward adjustment, suggests this needs to be significant. And application note two of the guideline gives you guidance as to what kind of force, actual violence, threats of serious bodily injury, et cetera. I see I've run out of my time. Thank you. Thank you. Ms. Rich. You may proceed. Thank you. May it please the Court, Mr. Murphy. I'll pick up where my colleague left off. As to the use of force, the district court did not apply the restraint, the two-level restraint. I don't know if I misheard or Mr. Murphy misspoke, but the district court sustained that objection to the PSR. So the enhancement was the four points for the special offense characteristic for use of force. But let me ask you, if I can, about count three. The evidence is really, really thin on the use of force. My understanding of it, you could tell me if I'm wrong, is she was really drunk, woke up at 5 a.m. or 6 a.m. to find that he was on top of her and having intercourse and that it hurt. But she said she couldn't get him off because she was drunk. My understanding is that he's a pretty big guy. And I guess I'm trying to find the use of force. If he was merely on top of her, I mean, every sexual assault is forceful in some sense. But what makes this specially forceful that would earn the enhancement for that one? So this Court and also the cases we cited from the Tenth Circuit have recognized that the use of force, there's a distinction between a legal and a factual. And what type of force is going to be required in a situation is dependent on the context and the response by the victim. And so the force, to your point, that needs to be something more than what is required to accomplish the assault itself. Here, that was meant by count three because when you consider in context that she was intoxicated and woke up to this happening, is occurring as she wakes up. So he removes her pants and underwear while she was still out. And then, I couldn't get him off me because I was drunk. I think you said that's on page 37 of her record. But it's also relevant, her description of how she felt afterwards goes to the force because in the context of that situation, there's no indication that she would have felt that if he had not used force. If it was just the sex act itself would not have caused that, the type of pain that she described. But there's no evidence that kicked her, hit her, pushed her, actually physically held her down, like restrained her, put his arm around her neck, nothing. It's just what you're relying, I just want to know for the record, you're relying on what she felt afterwards. That's primarily what the government rely on. Yes, that it was a result of that the pain and how her body felt afterwards was a result of the force that he would have used or used to accomplish that. Correct. So do you see the distinction or do you recognize a distinction that I think I see, which is use of force to get her to engage in or not resist this versus, let's say, a forceful sex act, right? And is that a distinction that you see in that guideline? Well, I think that kind of goes to what this court has said in CRB and Bordeaux and Fire Thunder. It has to be restrained upon a person that was sufficient that they could not escape the sexual contact. So here, you take a victim as you find them. So the fact that she couldn't escape, in part because she was intoxicated. Which was not his force. The intoxication was her choice, correct. They were all drinking. Yeah, it's an interesting, because if you're just looking at the result, it's hard then to look backward and say, what was the cause of those physical symptoms? Well, and I think that's an interesting question, a sense of what if you have a victim who is disabled, has some sort of physical disability or they're partially paralyzed. So they don't have the ability to use an expected level of force to physically resist someone. Right, right. And I appreciate that, except the guideline talks about what the defendant's conduct is and sort of what does the defendant do. So it can be maybe line drawing, but it does feel like there's a distinction between those two. So the guideline talks about that, and it's interesting because then the case law says that the person could not escape the sexual contact. So it's as if then there's some onus on the victim to try to do something to escape it. And that's why I think it matters that he chose to, while she's unconscious, engage in the removal of her clothes, spreading her legs, and physically entering her in a way that she could not escape that. So I agree it's a closer call on count three. We would just note that count two, there's similar conduct, the only addition being that she was awake when he pushes her onto the couch. Can I ask you just in terms of the calculation to confirm this? So there's two, he, opposing counsel didn't talk about the five level enhancement for pattern of activity. But my understanding of the weirdness in which the guidelines kind of applied here, it was very unusual, is if we affirm on that five level enhancement, does the last enhancement for use of force, does that become moot? Because he would then be at, I guess, level 47 for count one, which is above 43, or am I totally misreading the situation here? So the use of force can apply to count one. It only applied in counts two and three. Paragraphs 29 and 35 of the PSR. There's quite a lot of confusion because the paragraph numbers got numbered between the draft and the final. So I think either way, he was over level 43, and got reduced to the top end total offense level of 43. If this court were to reverse on just the special offense characteristic, it would change that adjusted offense level. But the overall, he still would be brought down to a total level 43, as I read the guidelines. On that note, I just want to also say that this case is very similar to the Papakee case that this court decided, where the victim was an adult. And when she wakes up, the defendant was holding her against the bed with his knees on her shoulders. And he kind of headbutts her at one point, and so we would draw the court's attention to that level of restraint is similar to what's going on here, particularly as it relates to counts two and three. Turning towards the 413 issue, the United States' position is the district court did not abuse its discretion here in admitting KW's testimony. The district court was very engaged during the course of multiple hearings and notices in examining the record of KW's relevance of the various witnesses' testimony or proposed testimony. The United States had originally noticed that several additional 413, 414 witnesses, which the district court kept out. And they were brought up again at sentencing as being not similar enough. In its analysis, the district court cited the rules 413, 414, and also quoted and reviewed this court's decisions in Holohorn, Never Misses a Shot, LeCompte. So it was very clear as to what steps needed to be taken and what analysis needed to be done. And in doing that, the district court noted and found that this was similar, that the attacks on KW with the charged offenses and CTB were similar under all of those standards. The first attacks on CTB and the attack on KW occurred within approximately one to three years. So it was pretty close in time, especially considering we've had this court has had cases where it was like 20 years apart. The defendant, although he wasn't a family member to KW, he was known to her. So I draw that he was dating her friend and they went to school together. And so it was not like this was a stranger and she had no idea who this person was. So they did have some connection. And because he's dating a friend of hers, and in CTB's case was her uncle by virtue of marriage, he was a person who should have been someone that they could trust. This was a known entity then that was not some stranger in a parking lot. He had them both alone and isolated, as many sex offenses are. And so the fact that KWs is outside and CTBs are inside really doesn't carry a lot of significance when there's sense of they're away from other people. Can you think of prosecuting any sex offenses where there were multiple people? Well, unfortunately we've had, you know, there's a number of like gang rape type situations where there's other witnesses or someone maybe in the next room. And Red Elk was careful to be more separate. So next room would be different or the same? Well, there you at least have more of a potential that there's going to be a witness who maybe heard something. I can't remember the case off the top of my head, but maybe it was Crow Eagle where there was a cousin who was in the next room and heard a victim cry out, that sort of thing. But here, KW's assault and this assault against, all the assaults against CTB are similar in that Red Elk was aware that there was not going to be anyone else available as a witness. With both, that both of them were female victims, this court excluded, or excuse me, this court, the district court excluded HRO's testimony in part because he was a male victim. So there's a similarity in that they're both female and they're both younger than Mr. Red Elk. What's the standard of review on this issue? Is it abusive discretion or is it clear air as to a finding of similarity? I think it's clear air as to a finding of similarity. And then abusive discretion if they had, if the court had misstated the law or something like that. Is there a case that says clear air? Do you know? Well, I believe it was Judge Shepard said and St. Clair that there has to be an improper evidentiary ruling that affected the defendant's substantial rights or had more than a slight influence on the verdict. That's harmless air though. That's the only issue with that. Or that's how we usually express harmless air. Harmless air, right. I, I, off the top of my head, I can't, I can't come up with a case name. Well, the problem is, is you identify some similarities, but opposing counsel identifies a lot of dissimilarities. Like what happened at a public place? One didn't. One happened while they were both minors. The other one didn't. I mean, it seems like you've got a laundry list on each side. And the thing that makes this hard is our atextual interpretation of substantially similar. So is it substantially similar? I don't know. There's a lot of differences. Well, and I think the language of this course most often utilizes is just similar. Okay. And in Crow Eagle, Crawford has noted that it's the methods, you know, looks specifically at the methods of assault. Here, the method of assault was similar in that the defendant was attempting to accomplish penile vaginal sexual assault as opposed to a, you know, inappropriate touching or using an object or something like that. I take the court's point that there is some difficulty, which is why this court has also said that great deference should be afforded to the court who has the opportunity to observe the testimony and evaluate the notices at that time, which the district court did here. After CTB had testified, but before KW had testified, the court held a hearing outside the presence of the jury to, again, evaluate whether this testimony should be admitted and felt it done. Also this court has said never misses a shot. That similar doesn't mean identical. I mean, that would not square with the language of 413 and 414, which says any sexual assault, which is quite broad. And this court has taken the opportunity to, you know, give attorneys and district court judges some more guidance and that, no, you still have to find it similar because then that does allow them to perform the gatekeeping function under Rule 403 balancing that it's not so prejudicial to a defendant to have this propensity evidence. I just wonder, I guess I wonder whether in our cases or whether this case could end up being that case, whether we say these things like similar or strikingly similar in whatever we say, but that in application we're not actually applying such a test. Because, I mean, it's just so easy to think of cases where you could come in and argue they're similar, like both involving a female victim, you know, one maybe happens in a car and then one happens in your date's home or something like that. You say, well, that's similar because it's, you know, they're both female and both involved intercourse, not another type of sex. And that doesn't seem very strikingly similar to me. Well, and here I think that's why in the past this court and other circuit courts have said that, have looked at on balance what is going on in a situation. And here it's more than just an age, it's more than just a victim type, it's the way that this defendant, this suspect is willing to operate and commit these crimes. And when you look at the legislative intent behind these rules is that this should come in, not without any guardrails, but it's been put these guardrails on it. And so I don't think this would be the case for that. Particularly when you look at here that the defendant confessed to count three, the jury heard evidence that he admitted he'd had sex with her. And her testimony alone established that. So there's no indication that K.W.'s testimony was so overwhelming to the jury that it should not, that it caused him some sort of unfair prejudice. Are you arguing harmless there on that then, that bringing in K.W.'s testimony was completely harmless? I'm not saying, I mean it was certainly propensity evidence that the jury heard. And we do argue harmless there in our brief. But I think that goes to show that the district court is evaluating this in the context of a whole trial. And so if you start siloing certain categories of evidence, that could hamstring district courts from being able to rule either way in the context of an entire trial. Thank you. Thank you. Does Mr. Murphy have any time remaining? No. All right. So an important case. We'll allow you a minute to respond. Regarding the use of force issue, the case cited by the government was also cited by us, demonstrated the kind of use of force necessary. That was a case where the defendant literally physically head-butted the victim, put his knees on her shoulder to accomplish the sex act. Nothing like that happened here. The victim's testimony was she was pushed once and then after that did not resist at all, instead let it happen. I started to say in regard to the use of force issue that the court was confused in two levels. First, the conflating use of force and physical restraint. But secondly, taking facts from count one and applying them to counts two and three, which is the only counts where that was applicable. The government identified there could be a vulnerable victim, a disabled person. That's covered by other guideline provisions, not use of force. I see once again I've expired my time. I would indicate the abuse of discretion standard is from the never misses a shot case and it was applied to 403 and 413. Thank you. Thank you, counsel. The case has been well argued. We appreciate your arguments and the case is submitted. We'll render a decision as soon as possible.